**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| ALEXANDRIA LINDERS, individually and on behalf of all others similarly situated,<br><br>                                        Plaintiff,<br><br>        v.<br><br>FESTIVAL FUN PARKS, LLC,<br><br>                                        Defendant. | Civil Action No.: 3:25-cv-00659-SVN |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION**
**TO DISMISS AND COMPEL ARBITRATION**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION..................................................................................................................1

ARGUMENT ..................................................................................................................... 3

   A.  Festival Bears the Burden of Establishing Plaintiff Agreed To Arbitrate ........................ 3

   B.  Festival Cannot Form A Contract Under Either Connecticut Or Pennsylvania Law ......... 3

   C.  Festival Fails To Establish Inquiry Notice........................................................................ 4

      1.  Festival Never Clearly Signaled Plaintiff Would Be Agreeing To Its
"Terms&Conditions"................................................................................................ 4

      2.  Festival's "Terms&Conditions" Hyperlink Was Visually Separated............................ 7

      3.  Festival's One-Time Discount Offers Further Undermine Inquiry Notice................... 10

      4.  Festival's Unsupported Arguments To The Contrary All Fail ..................................... 12

   D.  Festival Fails To Secure Unambiguous Manifestation Of Assent .................................... 14

   E.  Festival's Browsewrap Agreement Is "Rarely Enforceable"........................................... 15

   CONCLUSION .................................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

**CASES**

*Applebaum v. Lyft, Inc.*,
   263 F. Supp. 3d 454 (S.D.N.Y. 2017) ................................................................ 14

*Arnaud v. Doctor's Assocs. Inc.*,
   821 F. App'x 54 (2d Cir. 2020) ............................................................... 1, 2, 5

*Bolling v. Bobs Disc. Furniture, LLC*,
   2024 WL 1327357 (E.D.N.Y. Mar. 27, 2024) ...................................................... 15

*Carter v. Ralph Lauren Corp.*,
   683 F. Supp. 3d 400 (S.D.N.Y. 2023) ............................................................... 12

*Chabolla v. ClassPass Inc.*,
   129 F.4th 1147 (9th Cir. 2025) ......................................................... 11, 14, 15

*Chilutti v. Uber Techs., Inc.*,
   300 A.3d 430 (Penn. Sup. Ct. 2023),,, ............................................................. 3, 4

*Edmundson v. Klarna, Inc.*,
   85 F.4th 695 (2d Cir. 2023) ......................................................................Passim

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012) ............................................................... 15

*Long v. Provide Commerce, Inc.*,
   200 Cal. Rptr. 3d 117 (2016) .......................................................................... 6

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017) ................................................................... 9, 10, 15

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016) ........................................................................... 7

*Pilon v. Discovery Commc'ns, LLC*,
   769 F. Supp. 3d 273 (S.D.N.Y. 2025) ............................................................... 15

*Quamina v. JustAnswer LLC*,
   721 F. Supp. 3d 1026 (N.D. Cal. 2024) ............................................................. 13

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004) .......................................................................... 15

*Rodriguez v. Festival Fun Parks, LLC,*
    763 F. Supp. 3d 336 (E.D.N.Y. 2025) ..............................................................Passim

*Sellers v. JustAnswer LLC,*
    73 Cal. App. 5th 444 (2021) ....................................................................................... 10

*Sgouros v. TransUnion Corp.,*
    817 F.3d 1029 (7th Cir. 2016) ................................................................................... 14

*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.,*
    999 F.3d 828 (2d Cir. 2021) ...........................................................................Passim

*Specht v. Netscape Commc'ns Corp.,*
    306 F.3d 17 (2d Cir. 2002) ........................................................................................... 2

*Starke v. SquareTrade, Inc.,*
    913 F.3d 279 (2d Cir. 2019) ...........................................................................Passim

*Zachman v. Hudson Valley Fed. Credit Union,*
    49 F.4th 95 (2d Cir. 2022) ........................................................................................... 3

## INTRODUCTION

As Festival Fun Parks, LLC readily concedes, another "court in this Circuit," applying the same web-based contract formation principles that control here, "declined to compel arbitration based on Terms and Conditions on Festival's website." ECF No. 20-1 at 11. *See Rodriguez v. Festival Fun Parks, LLC*, 763 F. Supp. 3d 336 (E.D.N.Y. 2025). For good reason.

For Festival's hyperlinked terms to be enforceable, the webpage needed to "*expressly warn* the user that by [completing the transaction], the user was agreeing to be bound by the linked terms." *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd*., 999 F.3d 828, 838 (2d Cir. 2021) (cleaned up) (emphasis in original). Yet here, "the 'Terms&Conditions' hyperlink [on Festival's website] did not contain any text or visual signal that 'clearly warned' [plaintiff] that clicking the 'Continue' button and proceeding with her ticket purchase 'would constitute assent' to the Terms." *Rodriguez*, 763 F. Supp. 3d at 355.

This is dispositive. The Second Circuit has repeatedly "emphasized the importance of *clearly signaling* to the consumer in some fashion that, by continuing with the transaction or by using a website, she will be agreeing to the terms contained in an accompanying hyperlink." *Soliman*, 999 F.3d at 837 (2d Cir. 2021) (emphasis added).

In cases where the courts have refused to enforce hyperlinked terms, they found that:

- The website gave no "*express warning*" or "*clear prompt* directing users to read the Terms and Conditions and signaling that their acceptance of the benefit of registration would be subject to contractual terms." *Soliman*, 999 F.3d at 838 and 841 (2d. Cir. 2021) (emphasis added).

- The website "*did not provide language informing the user* that by clicking 'I'M IN' the user was agreeing to anything other than the receipt of a coupon," and was as *introduced by no language* other than the shorthand 'T & Cs.'"*Arnaud v. Doctor's Assocs. Inc*., 821 F. App'x 54, 56 (2d Cir. 2020) (emphasis added).

- The "email *in no way signals* to [plaintiff] that he could click on the link, and it *does not advise him that he would be deemed to agree* to the contract terms in the

document to be found by clicking that link." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 293 (2d Cir. 2019) (emphasis added).

- The computer screen "*did not make clear* to the consumer that clicking on the download button would signify assent to those terms." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29–30 (2d Cir. 2002) (emphasis added).

"[L]ike in *Starke, Soliman*, and *Arnaud*, the 'Terms&Conditions' hyperlink is not accompanied by any other language that would indicate that, by proceeding with the transaction, the user is agreeing to the hyperlinked contractual terms." *Rodriguez*, 763 F. Supp. 3d at 354. And so its motions to dismiss and compel arbitration, both based on its hyperlinked "Terms&Conditions," should be denied.

The cases Festival relies on, in contrast, are readily distinguishable, because there, "the interface *clearly warned* the user that taking a specific action would constitute assent to certain terms." *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 704 (2d Cir. 2023) (emphasis added). In those cases, unlike here:

- The webpage contained "the conspicuous and clear statement, '*I agree to the payment terms*,' with the button marked '*Confirm* and continue' directly below it," so a user could readily "understand that the 'Confirm and continue' button is the mechanism by which the user '[c]onfirm[s]' his or her 'agree[ment] to the payment terms.'" *Edmundson*, 85 F.4th at 708 (2d Cir. 2023) (emphasis added).
- "[T]he text on the Payment Screen … *expressly warned* the user that *by creating an Uber account, the user was agreeing* to be bound by the linked terms." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80 (2d Cir. 2017) (emphasis added).

Here, in contrast, the webpages that Festival claims secure Plaintiff's agreement here *lack any statement* that the user was *agreeing to anything*. Nor do they ask plaintiff to "*confirm*" anything.  In other words, this is not a situation where the "interface includes language signaling to users that they will be agreeing to [defendant]'s terms." *Edmundson*, 85 F.4th at 707. Instead, Festival webpage contains nothing more than "vague references to 'terms and conditions' used in other cases, which we[re] deemed to undermine the conspicuousness of notice." *Id.* (citing *Soliman*, 999 F.3d at 832 and *Starke*, 913 F.3d at 294). "Accordingly, applying the Second

Circuit's precedents to the facts in the record and considering the totality of the circumstances, Festival has failed to establish that [Plaintiff] was on inquiry notice of the Terms." *Rodrguez*, 763 F. Supp. 3d at 355.

## ARGUMENT

### A.    Festival Bears the Burden of Establishing Plaintiff Agreed To Arbitrate

"The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101–02 (2d Cir. 2022). Here, as the party seeking to compel arbitration, Festivals bears the burden of proving Plaintiff Alexandra Linders agreed to arbitrate.

### B.    Festival Cannot Form A Contract Under Either Connecticut Or Pennsylvania Law

"The question of whether the parties have agreed to arbitrate their disputes is determined by state contract law principles." *Rodriguez*, 763 F. Supp. 3d at 348 (*citing Starke*, 913 F.3d at 288). As Festival notes, the only two states laws that could apply are Connecticut or Pennsylvania. *See* ECF No. 20-1 at 7, n.2. Courts in the Second Circuit, including those applying Connecticut law, hold that, absent a showing of actual knowledge, a user will be bound by hyperlinked terms only "if (1) a 'reasonably prudent' person would be on inquiry notice of the terms, and (2) the user unambiguously manifests assent through conduct that a reasonable person would understand to constitute assent." *Edmundson*, 85 F.4th 695, 703 (internal citations and quotation marks omitted). Pennsylvania law applies the same two-step framework—except it demands a "stricter burden of proof" to show an unambiguous manifestation of assent.[1] *See Chilutti v. Uber Techs., Inc.*, 300 A.3d 430, 444, 449 (Penn. Sup. Ct. 2023), *appeal granted*, 325 A.3d 446 (Pa. 2024).

---

[1] "[U]nder under Pennsylvania law… a stricter burden of proof is necessary to demonstrate a party's unambiguous manifestation of assent to arbitration. This is accomplished by the following: (1) explicitly stating on the registration websites and application screens that a consumer is waiving a right to a jury trial when they agree to the company's

3

Because Festival's website fails even under the Second Circuit's more lenient standard, we need not decide which state's law governs. *Accord* ECF No. 20-1, at 7, n.7 and *Rodriguez*, 763 F. Supp. 3d at 349, n.10 and 350, n. 11.

### C.    Festival Fails To Establish Inquiry Notice

To establish whether an internet user is on inquiry notice of a contract, the Second Circuit has repeatedly "emphasized the importance of clearly signaling to the consumer in some fashion that, by continuing with the transaction or by using a website, she will be agreeing to the terms contained in an accompanying hyperlink." *Soliman*, 999 F.3d at 837 (2d Cir. 2021) (collecting cases).

### 1.    Festival Never Clearly Signaled Plaintiff Would Be *Agreeing* To Its "Terms&Conditions"

Here, Festival's website fails to clearly signal that Plaintiff is agreeing to its Terms. Instead, its webpages merely contain "vague references to 'terms and conditions.'" *Edmundson*, 85 F.4th at 707. *See, e.g.*, ECF No. 20-3 at p. 4 (reproduced below), *see also id.*, at pp. 3, 5, 7, and 9 (same).



'terms and conditions,' and the registration process cannot be completed until the consumer is fully informed of that waiver; and (2) when the agreements are available for viewing after a user has clicked on the hyperlink, the waiver should not be hidden in the "terms and conditions" provision but should appear at the top of the first page in bold, capitalized text." *Chilutti*, 300 A.3d at 449-50.

The Court in *Rodriguez*, 763 F. Supp. 3d at 343, likewise held that the following webpage failed to establish inquiry notice:



*Rodriguez* held this "'Terms&Conditions' hyperlink fails to provide reasonably conspicuous notice of the Terms." 763 F. Supp. 3d at 354.  The Court noted that "like in *Starke, Soliman*, and *Arnaud*, the 'Terms&Conditions' hyperlink is *not accompanied by any other language that* would indicate that, by proceeding with the transaction, *the user is agreeing to the hyperlinked contractual terms*." *Id.*  (emphasis added).

As the *Soliman* court explained:

> In our view, the problem with merely displaying a hyperlink in a prominent or conspicuous place is that, without notifying consumers that the linked page contains binding contractual terms, the phrase "terms of use" may have no meaning or a different meaning to a large segment of the Internet-using public. In other words, a conspicuous "terms of use" hyperlink may not be enough to alert a reasonably prudent Internet consumer to click the hyperlink.

*Soliman*, 999 F.3d at 838 (quoting *Long v. Provide Commerce, Inc.*, 200 Cal. Rptr. 3d 117, 126-27 (2016)). Such "vague references to 'terms and conditions'" are not enough to establish inquiry notice of terms. *Edmundson*, 85 F.4th at 707.

On this point, the interface from *Starke* is instructive. There, the Second Circuit held the following hyperlinked terms failed to establish inquiry notice. *See* 913 F.3d at 285 (2d Cir. 2019) (reproduced below with red boxes to highlight relevant elements).



Even though "[t]he subject line of the email says '...Contract is Enclosed," the Second Circuit held the vague hyperlinked reference to "Terms & Conditions" failed to put users on

inquiry notice. *Starke*, 913 F.3d at 285. While the email said a "Contract is Enclosed," nothing in the text of the email "put [plaintiff] on notice that his 'Service Contract' would come in the form of a hyperlink, rather than in the body of the email." *Id*. at 292-93. "[T]he SquareTrade email in no way signals to Starke that he should click on the link, and it does not advise him that he would be deemed to agree to the contract terms in the document to be found by clicking that link. Nor does the email instruct him that the hyperlink is where his promised service contract can be found. The 'Terms & Conditions' hyperlink appears without any 'language advising [plaintiff] to click on [it].'" *Id*. at 293. (internal citation omitted).

Festival's webpage here is even worse, because it fails to even tell consumers that a "Contract is Enclosed," anywhere on the page. It simply contains a stray hyperlink at the bottom of the webpage that fails to advise a consumer a contract might be lurking within it.

### 2.    Festival's "Terms&Conditions" Hyperlink Was Visually Separated

Worse still, the Court in *Rodriguez* held Festival's webpage failed to give inquiry notice for a second reason: "the 'Terms&Conditions' hyperlink on the Splish Splash ticket purchase page is visually separated from the portion of the webpage that displays the total purchase price of the tickets selected for purchase and the 'Continue' button that must be clicked to move forward with a purchase." 763 F. Supp. 3d at 354. This further undermines inquiry notice because "the presentation of terms is not directly adjacent to the 'Place your order' button so as to indicate that a user should construe clicking as acceptance." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 236–37 (2d Cir. 2016). On this second point, *Nicosia* is also instructive. There, the Court held that the following screen failed to establish inquiry notice of Amazon's hyperlinked terms. *See id.* at 241 (reproduced next page with red boxes to highlight relevant elements).

7



In other words, even though the webpage expressly warned users that "*by placing your order, you agree* to Amazon.com's … conditions of use," the notice *still* failed to establish inquiry notice because it was too far away from Place your Order button.

8

Again, here, Festival's webpages all face the same problem. On every single screen Festival relies on, the "Terms&Conditions" hyperlink is separated in its own standalone blue box, away from whatever buttons consumers need to click to proceed with the transaction. *See* ECF No. 20-3 at 4 (below); *accord id*. at pp. 3, 5, 7, and 9.

 

In contrast, in the Second Circuit cases which Festival relies on, the webpages feature both elements that are missing here: (1) they gave warning that users were *actually agreeing to terms*, and (2) that warning was *directly above or below the button* that signified acceptance.

For example, in *Edmundson*, "[t]he statement 'I agree to the payment terms' is *directly above* the 'Confirm and continue' button, which a user must click to complete the purchase." 85 F.4th at 706 (emphasis added); *see id.* at 711 (reproduced below).



Likewise, in *Meyer*, "the warning that 'By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY'… appears *directly below* the buttons for registration." *Meyer*, 868 F.3d at 78 (emphasis added); *see id.* at 81 (reproduced on the next page).



### 3.    Festival's One-Time Discount Offers Further Undermine Inquiry Notice

Inquiry notice was further undermined by the context of the transaction. Plaintiff here was making a one-off purchase and responding to promotional sales. *See Soliman*, 999 F.3d at 838 (2d Cir. 2021). In most cases where hyperlinked terms are enforced, there is "some sort of continuing relationship between the putative user and [defendant]" such that one would be more likely to expect to see "some terms and conditions." *Meyer*, 868 F.3d at 80. For example, *Meyer* involved a consumer signing up for a ride-share application where he "took *ten rides* with Uber," *see id*. at 70, while *Edmundson* involved a person borrowing money from "'buy now, pay later' service" where people paid back the principal "in four equal installments over time." 85 F.4th at 698. Here, in contrast, Plaintiff had made a *one-time purchase* of tickets to a water park. Where "a website provider … seek[s] to impose contractual terms in connection with the sale of a single item, such as a pair of socks … most consumers would not expect to be bound by contractual terms." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 464 (2021). And a sock purchaser "that does not expect to be bound by contractual terms is less likely to be looking for them." *Id*. The same is true here. When Plaintiff used Festival's website, she was expecting tickets to a water park, not a one-way ticket to arbitration.

Worse still, "when a user … avails herself of a *one-time discount offer*, *there is [even] less reason for her to expect a continued relationship* beyond the purchase." *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1155 (9th Cir. 2025) (emphasis added). And here, Festival advertised all its tickets as being on sale, so consumers needed to act quickly to take advantage of a "Limited Time Offer" to "*Save 40% ... when you buy now!*" *See* ECF No. 20-3 at 2 (reproduced below with red boxes to highlight relevant elements).



Accordingly, the Second Circuit has held that "[t]he importance of signaling that a consumer is about to agree to something is *even more pronounced in the context of a promotional*

*offer* [], because a reasonable consumer could easily conclude that any vague reference to '[t]erms and conditions' (assuming the consumer noticed the reference at all) simply contained details about [the sale], as opposed to the consumer understanding that she was affirmatively agreeing to anything." *Soliman*, 999 F.3d at 838 (2d Cir. 2021) (emphasis added); *accord Carter v. Ralph Lauren Corp.*, 683 F. Supp. 3d 400, 415 (S.D.N.Y. 2023) (denying motion to compel arbitration where defendant "did not 'clearly signal' to Plaintiff that, by continuing her enrollment in the Loyalty Program, 'she would be agreeing to the terms contained in the accompanying hyperlink.' The text messages instead signaled to Plaintiff that she had the opportunity to accept a '20% offer.'") (internal brackets omitted).

### 4.    Festival's Unsupported Arguments To The Contrary All Fail

Because the case law does not favor it, Festival launches a series of arguments attempting to distinguish *Rodriguez* and the numerous Second Circuit decisions upon which it is based. None hold water.

**<u>Festival's Multiple Screens Do Not Cure Its Notice Problems; They Compound Them.</u>**

First, Festival attempts to distinguish *Rodriguez* by arguing that it "considered only one page from the ticket purchase process," even though here, it has shown its blue box of hyperlinks appeared on four other pages. ECF No. 20-1 at 12. But *Rodriguez* held that "[t]he presence of hyperlinks to the Terms on four additional webpages involved in the ticket purchase process, as opposed to just one, would not change my analysis as to whether Rodriguez was on inquiry notice of the Terms or whether Rodriguez manifested assent to the Terms." 763 F. Supp. 3d at 352, n.16.

The Second Circuit in *Starke* also squarely rejected Festival's exact same argument. There, a defendant argued a plaintiff was on inquiry notice because "on six prior occasions … he received a confirmation email from SquareTrade which looked just like the confirmation email at issue here." *Starke*, 913 F.3d at 296. "The fact that [plaintiff] received emails with the same

inconspicuous hyperlink on more than one occasion does not lead us to conclude that Starke had either actual or inquiry notice." *Id*. Simply put, no matter how many times defendant emailed plaintiff, not once was defendant's Terms & Conditions "hyperlink … *clearly identified* as containing contractual terms to which the customer manifests assent by completing the transaction." *Id*. (emphasis added). And so the motion to compel arbitration was denied. *Id*.at 297.

The same is true here. Festival's inquiry notice problems remain the same on every single one of its webpages. They all contain a stray hyperlink to "Terms&Conditions" (1) without any warning or language that signaled to consumers they would be agreeing to terms and (2) the link was set off in its own blue box far away from any buttons needed to complete the purchase. As the Second Circuit noted: "the problem with merely displaying a hyperlink in a prominent or conspicuous place is that, without notifying consumers that the linked page contains binding contractual terms, the phrase 'terms of use' may have no meaning or a different meaning to a large segment of the Internet-using public." *Soliman*, 999 F.3d at 838. If Festival's vague "Terms&Conditions" had no meaning to users on the first page, why would we assume users would suddenly divine a new meaning to them on second, third, or fourth page? "The obvious problem is that aggregating individually insufficient forms of notice does not somehow add up to a positive." *Quamina v. JustAnswer LLC*, 721 F. Supp. 3d 1026, 1040 (N.D. Cal. 2024), *aff'd sub nom. Godun v. JustAnswer LLC*, 135 F.4th 699 (9th Cir. 2025).

### **Consumers Would Not Expect To Be Bound By Anything Other Than Park Rules.**

Second, citing no authority, Festival argues that "[n]o reasonable consumer in today's world would expect that they could purchase tickets to an amusement park online with no applicable terms and conditions." ECF No. 20-1 at 8. Yet, as noted, other courts have held they opposite: "when a user simply purchases goods or avails herself of a one-time discount offer, there

13

is *less* [not more] reason for her to expect a continued relationship." *Chabolla*, 129 F.4th at 1155 (citing cases) (emphasis added). And in any event, Festival's argument is undermined by its own website. Festival requires consumers to check a box acknowledging their "**Park Rules**" and warns them that "It is mandatory to accept these conditions to make a purchase." ECF No. 20-3 at 7.



So even if consumers did expect to be bound by *some terms*, they would assume those were the **Park Rules** they were forced to check a box to acknowledge, not *some other* set of hyperlinked "Terms&Conditions." If anything, the fact Festival expressly required consumers to check a box acknowledging its Park Rules would lead them to believe they were *not* bound by other terms they were *not* required to check. "Where a website specifically states that clicking means one thing, that click does not bind users to something else." *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 468 (S.D.N.Y. 2017) (*quoting Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1035 (7th Cir. 2016)).

### D. Festival Fails To Secure Unambiguous Manifestation Of Assent

For many of the same reasons Festival failed to give inquiry notice, it also failed to obtain the unambiguous manifestation of assent. First, as the Court in *Rodriguez* noted, "the 'Terms&Conditions' hyperlink did not contain any text or visual signal that 'clearly warned' Rodriguez that clicking the 'Continue' button and proceeding with her ticket purchase 'would constitute assent' to the Terms." 763 F. Supp. 3d at 355. Second, as noted previously, Festival's "Terms&Conditions" were cloistered away in their own separate blue box, so they were not "not presented to the user in an expected location on the interface because it was not located directly

14

next to, above, or below the button Rodriguez had to click to continue with the purchase of [amusement park] tickets." *Id*. at 356.

And third, "there is no evidence in this record of any course of prior dealings between the parties. Thus, none of the factors identified in *Edmundson* show that clicking the 'Continue' button was a manifestation of assent 'sufficiently definite to assure that the parties [were] truly in agreement with respect to all material terms.'" *Id*. at 356 (internal citations omitted).

### E.    Festival's Browsewrap Agreement Is "Rarely Enforceable"

Finally, while Festival attempts to characterize this case as a "close call," ECF No. 20-1 at 13, it fails to cite *any* case where a stray "Terms" hyperlink divorced from an express signal of contractual consequence was held enforceable. Indeed, in every single case Festival relies on, consumers either expressly knew the terms existed or the terms were accompanied by some kind of language signaling agreement.[2]

Festival's website, in contrast, involves a paradigmatic "browsewrap contract[]—in which consumers are deemed to have accepted posted terms of an electronic service merely by continuing to use the service." *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 288–89 (S.D.N.Y. 2025). "[B]rowsewrap contracts… are *rarely enforceable*." *Id*. (emphasis added); *accord Chabolla*, 129 F.4th at 1154 ("Courts *consistently decline to enforce* browsewraps.") (citing multiple other Circuit Court cases). For good reason. Internet contract formation law requires "courts … to determine whether there was an objective *meeting of the minds* sufficient to give rise

---

[2] In *Meyer*, the notice said "By creating an Uber account, *you agree* to the TERMS." 868 F.3d at 76 (emphasis added). In *Edmundson*, the notice said "*I agree* to the payment terms," 85 F.4th at 699 (emphasis added). In *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012), the notice said, "By clicking Sign Up, you are indicating that you have read and *agree* to the Terms." (Emphasis added). In *Bolling v. Bobs Disc. Furniture, LLC*, 2024 WL 1327357, at *2 (E.D.N.Y. Mar. 27, 2024), the hyperlink was prefaced by the phrase "*See* Terms & Conditions." (Emphasis added). And in *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 398 (2d Cir. 2004), the court did not infer a party was on inquiry notice of terms; rather the party "admit[ed] that it *knew perfectly well what terms* Register demanded," as it "was daily submitting numerous queries, each of which resulted in its receiving notice of the terms." (Emphasis added).

to a binding and enforceable contract." *Starke*, 913 F.3d at 289 (2d Cir. 2019) (emphasis added). And it would be inappropriate to infer an objective meeting of the minds based on nothing more than Festival's "vague references to 'terms and conditions.'" *Edmundson*, 85 F.4th at 707 (citing *Soliman* and *Starke*). "Given the breadth of the range of technological savvy of online purchasers, consumers cannot be expected to ferret out hyperlinks to terms and *conditions to which they have no reason to suspect they will be bound*." *Starke*, 913 F.3d at 295 (citation omitted).

## CONCLUSION

"Accordingly, there are two independent bases for finding that the arbitration provision located in the 'Terms&Conditions' that are accessible via a hyperlink on [Festival's] ticket purchase webpage is not binding on [plaintiff]." *Rodriguez*, 763 F. Supp. 3d at 356. For these reasons, Festival's motion to dismiss and compel arbitration should again be denied.

Dated: August 28, 2025                               Respectfully submitted,

                                                    **REARDON SCANLON LLP**

                                                    By: */s  James J. Reardon*
                                                         James J. Reardon

                                                    James J. Reardon, Jr. (CT 13802)
                                                    45 South Main Street, 3rd Floor
                                                    West Hartford, CT 06107
                                                    Telephone: (860) 955-9455
                                                    Facsimile: (860) 920-5242
                                                    Email: james.reardon@reardonscanlon.com


                                                    **BURSOR & FISHER P.A.**
                                                    Stefan Bogdanovich (*pro hac vice*)
                                                    1990 North California Blvd., 9th Floor
                                                    Walnut Creek, CA 94596
                                                    Telephone: (925) 300-4455
                                                    Email: sbogdanovich@bursor.com

                                                    *Attorneys for Plaintiff*

16

## **CERTIFICATE OF SERVICE**

I certify that the foregoing was filed through the Electronic Court Filing system on September 3, 2025, and a copy thereof will be sent electronically to the registered recipients as identified on the Notice of Electronic Filing.

/s/ *James J. Reardon, Jr.*